UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23449-CIV-MARTINEZ/SANCHEZ

ABS-CBN CORPORATION, *et al.*,

    Plaintiffs,

v.

HDMVS.TOP, *et al.*,

    Defendants,

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS'
APPLICATION FOR ENTRY OF PRELIMINARY INJUNCTION**

This matter is before the Court on the Plaintiffs' Application for Entry of Preliminary Injunction (the "Motion"). ECF No. 5.[1] Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International (collectively, the "Plaintiffs" or "ABS-CBN") moved for entry of a preliminary injunction against Defendants[2] based on claims that the Defendants violated the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(d), and the Copyright Act, 17 U.S.C. § 101 *et seq.*, and claims of common law unfair competition and common law trademark infringement.

The Court held a hearing on October 7, 2024, at which only counsel for the Plaintiffs was present and available to provide evidence supporting the Motion. The Defendants have not

---

[1] The Motion was originally filed as an *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction, but the Honorable Jose E. Martinez granted the Plaintiffs' request for entry of a temporary restraining order, ECF No. 7, and he then referred all matters relating to the Plaintiffs' request for entry of preliminary injunction to the undersigned for a Report and Recommendation, ECF No. 11.

[2] The Defendants are the Individuals, Business Entities, and Unincorporated Associations identified by domain name in the Complaint's caption and in Schedule "A" to the Complaint. ECF No. 1 at 36. Schedule "A" is also attached hereto.

responded to the Motion, have not made any filing in this case, and have not appeared in this matter, either individually or through counsel. Having reviewed the Motion, its accompanying attachments, the record, and the relevant legal authority, and for the reasons discussed below, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiffs' Motion be **GRANTED**.

## I. BACKGROUND

Plaintiff ABS-CBN International is the owner of two federally registered trademarks (the "ABS-CBN Registered Marks") and one common law mark (the "ABS-CBN Common Law Mark") (collectively, the "ABS-CBN Marks") identified in the Declaration of Elisha Lawrence Meehan, ECF No. 5-1 at ¶¶ 4-6. The Plaintiffs all share exclusive rights in and to the ABS-CBN Marks. *Id.* at ¶ 6. Moreover, Plaintiffs are all licensed to use and enforce the ABS-CBN Marks. *Id.* The ABS-CBN Marks are used in connection with the creation and distribution of high-quality entertainment content and services. *See id.* at ¶¶ 4, 7-8.

Further, Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyright in and to the movie specifically identified in Exhibit 2 to the Complaint, ECF No. 1-3. *See* ECF No. 5-1 at ¶ 4. Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights to TV shows initially produced in the Philippines, including but not limited to those specifically identified in Paragraph 33 of the Complaint and depicted in Exhibit 3 to the Complaint, ECF No. 1-4 (illustrative examples of unauthorized performances of ABS-CBN's unregistered copyrighted works). *See* ECF No. 5-1 at ¶ 4. Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." Plaintiffs all share exclusive rights in and to the Copyrighted Works, including the rights to distribute and perform the Copyrighted Works and to enforce their rights in the Copyrighted Works. *See id.*

Defendants, through their various Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted,

offered for distribution, distributed, and/or publicly performed the Copyrighted Works via their distribution services—without authorization—under what Plaintiffs have determined to be counterfeit and infringing reproductions of the ABS-CBN Marks. *See* ECF No. 5-1 at ¶¶ 11-14; *see also* ECF No. 5-2 at ¶ 2 (Declaration of Christine Ann Daley).

Although each Defendant may not copy and infringe each ABS-CBN Mark for each category of services protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed at least one or more of the ABS-CBN Marks and Copyrighted Works. ECF No. 5-1 at ¶¶ 11-14; *see* ECF No. 1-4. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the ABS-CBN Marks or to perform or distribute the ABS-CBN Copyrighted Works. *See* ECF No. 5-1 at ¶¶ 11-14.

On behalf of the Plaintiffs, as part of the ongoing investigation regarding the infringement of its intellectual property, Stephen M. Gaffigan, P.A. conducted an investigation into the advertising accounts/services used by the Defendants. ECF No. 5-2 at ¶¶ 1-5. These accounts/services are used by Defendants as a means to generate income on their websites operating under the Subject Domain Names. *See id.* Plaintiffs reviewed and visually inspected Defendants' websites and determined the distribution services offered were unauthorized distribution services performing pirated copies of ABS-CBN's Copyrighted Works and using the ABS-CBN Marks without permission to do so. ECF No. 5-1 at ¶¶ 11-14.

On September 6, 2024, Plaintiffs filed their Complaint against Defendants asserting claims for trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114 (Count I); false designation of origin, in violation of 15 U.S.C. § 1125(a) (Count II); common law unfair competition (Count III); common law trademark infringement (Count IV); and direct infringement of copyright (Count V) and contributory infringement of copyright (Count VI), in violation of 17

3

U.S.C. §§ 106(1), (3), (4) & 501.  ECF No. 1.  On September 7, 2024, the Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction, ECF No. 5, and their *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. 6.  On September 10, 2024, the Court entered an Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order.  ECF No. 7.

Pursuant to the September 10, 2024 Order, the Plaintiffs served each Defendant, by email and Plaintiffs' designated serving notice website, with a copy of the Complaint (ECF No. 1), the Order Granting *Ex Parte* Application for Temporary Restraining Order (ECF No. 7), and all filings in this matter.  *See* ECF Nos. 18-20.  The Plaintiffs also served each Defendant with a copy of the Court's Order Setting Preliminary Injunction Hearing (ECF No. 17).  *See* ECF Nos. 21-23.

## II.     LEGAL STANDARD

The Plaintiffs seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  To obtain a preliminary injunction, the Plaintiffs must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest."  *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying test to a preliminary injunction in a Lanham Act case).

As outlined below, the Plaintiffs have submitted sufficient evidentiary support to warrant enjoining Defendants from engaging in the alleged infringing activities.  *See, e.g., Louis Vuitton Malletier, S.A. v. Lin,* No. 10-61640-CIV-HUCK, 2010 WL 11550032 (S.D. Fla. Sept. 28, 2010) (granting preliminary injunction against defendants who failed to respond or appear in the case, after plaintiff presented sufficient evidence of infringing activity to support its application for

preliminary injunction).

### III.   ANALYSIS

The declarations and exhibits submitted by the Plaintiffs in support of their Motion support the following conclusions of law:

A. The Plaintiffs have a substantial likelihood of success on the merits of their claims. The Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by the Defendants' advertisement, promotion, distribution and public performance of the Copyrighted Works using counterfeits, reproductions, and/or colorable imitations of the ABS-CBN Marks, and that the services Defendants are offering and promoting are unauthorized distribution services using the ABS-CBN Marks.

B. Because of the infringement of ABS-CBN Marks and Copyrighted Works, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth by the Plaintiffs in their Complaint, Motion, and accompanying declarations and exhibits, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiffs and to consumers if a preliminary injunction is not issued:

   i. Defendants own or control Internet websites, domain names, or businesses which advertise, promote, and/or offer distribution services using counterfeit and infringing trademarks and infringe the Copyrighted Works in violation of Plaintiffs' rights; and

   ii. There is good cause to believe that more counterfeit and infringing services bearing and/or using the Plaintiffs' ABS-CBN Marks and Copyrighted Works will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these services; and that the Plaintiffs may suffer loss

5

of sales for their genuine services and an unnatural erosion of the legitimate marketplace in which they operate.

C. The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded services if a preliminary injunction is issued is far outweighed by the potential harm to the Plaintiffs, the Plaintiffs' reputations, and the goodwill that Plaintiffs have engendered as a manufacturer and distributor of quality services and entertainment content, if such relief is not issued.

D. The public interest favors the issuance of a preliminary injunction to protect the Plaintiffs' intellectual property interests and to protect consumers from being defrauded by the illegal palming off of counterfeit services and entertainment content as Plaintiffs' genuine services and entertainment content.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiffs' Application for Entry of Preliminary Injunction, ECF No. 5, be **GRANTED**. The undersigned further recommends that the preliminary injunction provide as follows:

(1)   Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are hereby restrained and enjoined until further Order of this Court as follows:

    a.   From advertising, promoting, copying, broadcasting, publicly performing, and/or distributing any of the Plaintiffs' content or copyrighted works;

    b.   From advertising, promoting, offering, distributing, using, and/or causing to be advertised, promoted, offered and/or distributed, any services using the ABS-CBN Marks, or any confusingly similar trademarks; and

  c. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of any evidence relating to the promotion, advertisement, procurement, and/or distribution of services or copyrighted content bearing or under the ABS-CBN Marks, or any confusingly similar trademarks or public performances or distributions of Plaintiffs' Copyrighted Works.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the ABS-CBN Marks, Copyrighted Works, or any confusingly similar trademarks or copies of the ABS-CBN Copyrighted Works, on or in connection with all Internet websites owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names.

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the ABS-CBN Marks, Copyrighted Works, or any confusingly similar trademarks or copies of the ABS-CBN Copyrighted Works, within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or that serves to direct computer searches to Internet websites registered, owned, or operated by any Defendant, including the Internet websites operating under the Subject Domain Names.

(4) Each Defendant shall not transfer ownership of the websites operating under the Subject Domain Names during the pendency of this action, or until further Court Order.

(5) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Preliminary Injunction.

(6) Upon the Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiffs the true identities and contact information of those registrants.

(7) The domain name registrars for the Subject Domain Names shall immediately, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiffs' choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries for the Subject Domain Names or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiffs have been or will be dismissed from this action or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action.

Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/BL6PHe/index.html, whereon copies of the Complaint, this Order, and all other documents on file in this action shall be displayed.  Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to 45.63.17.51, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action shall be displayed.  After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants.

(8)     This Order shall apply to the Subject Domain Names, associated websites, and any other domain names or websites that are being used by Defendants for counterfeiting or infringing the ABS-CBN Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiffs.

(9)     As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action or as to which Plaintiffs have withdrawn their request for a preliminary injunction.

(10)    This Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date set by the Court or stipulated to by the parties.

(11)    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiffs shall maintain its previously-posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment for damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further

Order of the Court.

---

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation, if any, with the Honorable Jose E. Martinez, United States District Judge. The parties shall accordingly have **until Friday, October 11, 2024,** to file and serve any written objections to this Report and Recommendation. Failure to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, on this 8th day of October, 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
Counsel of Record

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Subject Domain Name |
|---|---|
| 1 | hdmvs.top |
| 2 | kankoc.info |
| 3 | lambinganpinoyflix.net |
| 4 | tambayanteleseryes.net |
| 4 | piinoytambayans.net |
| 5 | pinoytambayantvs.net |
| 5 | piinoytambayantv.su |
| 6 | piinoytv.com |
| 7 | pinoy-flix.com |
| 8 | pinoyflixhd.com |
| 9 | pinoyflixreplay.com |
| 10 | pinoyflixstambayan.net |
| 11 | pinoyflixz.com |
| 11 | pinoyteleseryez.com |
| 11 | tambayanshd.com |
| 11 | tambayansflix.com |
| 12 | pinoytambayano.net |
| 12 | pinoylambingantambayans.su |
| 13 | pinoystambayans.net |
| 14 | pinoytambayanstv.com |
| 15 | pinoytvflixs.org |
| 15 | pinoytvflixteleserye.net |
| 16 | tambayans.su |
| 17 | teleseryetambayann.su |
| 17 | teleseryetambayans.su |