UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23449-CIV-MARTINEZ/SANCHEZ

ABS-CBN CORPORATION, *et al.*,

      Plaintiffs,

v.

HDMVS.TOP, *et al.*,

      Defendants,

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS'
MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT**

      This matter is before the Court on Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International's (collectively, the "Plaintiffs" or "ABS-CBN") Motion for Entry of Default Final Judgment. ECF No. 35.[1] A Clerk's default was entered against Defendants.[2] ECF No. 32. Plaintiffs now seek entry of final default judgment against Defendants. ECF No. 35. Defendants did not file a response to the complaint, to Plaintiffs' motion for entry of clerk's default, or to the motion for default judgment, and the deadlines to do so have long passed. After careful consideration of Plaintiffs' filings, the record, and the applicable law, and for the reasons discussed below, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs' Motion for Entry of Default Final Judgment, ECF No. 35, be **GRANTED**.

---

[1] The Honorable Jose E. Martinez referred all matters relating to Plaintiffs' motion for final default judgment to the undersigned. ECF No. 36.

[2] Defendants are the Individuals, Business Entities, and Unincorporated Associations identified by domain name in the complaint's caption and in Schedule "A" to the complaint. ECF No. 1 at 36. Schedule "A" is also attached hereto.

## I.      BACKGROUND

Plaintiffs sued Defendants for trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a) (Count II); common law unfair competition (Count III); common law trademark infringement (Count IV); direct infringement of copyright (Count V); and contributory infringement of copyright (Count VI).  ECF No. 1.

Plaintiff ABS-CBN International is the owner of two federally registered trademarks (the "ABS-CBN Registered Marks") and one common law mark (the "ABS-CBN Common Law Mark") (collectively, the "ABS-CBN Marks").  *Id.* at ¶¶ 22, 26; ECF No. 1-2 (certificates of registration); ECF No. 1 at 37.  Plaintiffs all share exclusive rights in and to the ABS-CBN Marks. *Id.* at ¶¶ 31, 56.  Moreover, Plaintiffs are all licensed to use and enforce the ABS-CBN Marks.  *Id.* The ABS-CBN Marks are used in connection with the creation and distribution of high-quality entertainment content and services.  *See id.* at ¶¶ 7-8, 27, 37-38.

Further, Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyright in and to the movie specifically identified in Exhibit 2 to the complaint.  ECF No. 1 at ¶ 32; ECF No. 1-3; ECF No. 1 at 38.  Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights to TV shows initially produced in the Philippines.  ECF No. 1 at ¶ 33; ECF No. 1-4 (illustrative examples of unauthorized performances of ABS-CBN's unregistered copyrighted works).  Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works."  Plaintiffs all share exclusive rights in and to the Copyrighted Works, including the rights to distribute and perform the Copyrighted Works and to enforce their rights in the Copyrighted Works.  ECF No. 1 at ¶¶ 35, 56.

Defendants, through their various Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted,

2

offered for distribution, distributed, and/or publicly performed the Copyrighted Works via their distribution services—without authorization—using counterfeit and infringing reproductions of the ABS-CBN Marks. *Id.* at ¶¶ 40-52, 54; *see also* ECF No. 5-1 at ¶¶ 11-14 (Declaration of Elisha Lawrence Meehan); ECF No. 5-2 at ¶ 2 (Declaration of Christine Ann Daley).

Although Defendants may not copy and infringe any ABS-CBN Mark for the category of services protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed at least one or more of the ABS-CBN Marks and Copyrighted Works. ECF No. 1 at ¶¶ 40-53; *see* ECF No. 1-4. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the ABS-CBN Marks or to perform or distribute the ABS-CBN Copyrighted Works. *See id.* at ¶¶ 40-46, 56.

Plaintiffs further assert that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) caused confusion, mistake, and deception among consumers and the general public as to the origins and quality of the Copyrighted Works and the services provided under the ABS-CBN Marks through Defendants' operation of the Subject Domain Names; (2) misrepresented to members of the consuming public that the counterfeit services and content that were being advertised and distributed were Plaintiffs' genuine, non-infringing services and content; (3) competed with Plaintiffs for space within organic search engine and social media results, thereby increasing Plaintiffs' marketing costs, decreasing the visibility of Plaintiffs' content and services, and depriving Plaintiffs of a valuable marketing and consumer education tool; and (4) degraded the goodwill associated with Plaintiffs' ABS-CBN Marks. *E.g., id.* at ¶¶ 41, 50, 53-54, 58, 70, 75-76, 81, 84-85, 90, 96-97.

In their motion, Plaintiffs seek the entry of default final judgment against Defendants and further request that the Court enjoin Defendants from further counterfeiting and infringing

activities, and award Plaintiffs statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c) and statutory damages against Defendant No. 1 pursuant to 17 U.S.C. § 504(c).  ECF No. 35 at 1.  Plaintiffs further request that the Court (i) cancel, or at Plaintiffs' election, transfer the Subject Domain Names at issue to Plaintiffs and require Defendants, their agents, or assignees to assign all rights, title, and interest to the Subject Domain Names to Plaintiffs; and (ii) permanently disable, delist, or deindex the websites' uniform resource locators ("URLs") and the Subject Domain Names from all search engines.  *Id.* at 1-2.

## II.     LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002).  The effect of a clerk's default is that all of the plaintiff's well-pleaded allegations are deemed admitted.  *See Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015); *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (defaulted defendant deemed to admit well-pled allegations, but "not held to admit facts that are not well-pleaded or to admit conclusions of law").

Only the well-pleaded allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim."  *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) ("The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015); *Certain Underwriters at Lloyd's London Subscribing to Pol'y BRT3A000415-02 v. A.M.A. Consulting & Constr. Servs.*, No. 21-cv-20979, 2022 WL 542893, at *5 (S.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 539183 (S.D. Fla. Feb. 22, 2022). Therefore, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *see also, e.g.*, *Luxottica Grp. S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) ("Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered."). If the admitted facts are sufficient to establish liability, then the Court must ascertain the appropriate amount of damages. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Where all the essential evidence needed to determine damages is found in the record, an evidentiary hearing on damages is not required. *See, e.g.*, *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2023 WL 2395475, at *1 (S.D. Fla. Mar. 7, 2023).

If there are multiple defendants, a plaintiff must state in the motion for default final judgment that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability. *Zuru Inc. v. Individuals*, No. 1:23-cv-22217-WILLIAMS/REID, 2024 WL 1809310, at *2 (S.D. Fla. Mar. 29, 2024). Generally, if one defendant who is alleged to be jointly and severally liable with other defendants defaults, judgment should not be entered against that defendant until the matter is adjudicated against all the remaining defendants. *Id.* (citing 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and

Procedure § 2690 (3d ed. 1998), and *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) ("[A] final decree on the merits against the defaulting Defendant alone, pending the continuance of the cause, would be incongruous and illegal.")).

Here, Plaintiffs have explained in their motion that they are not seeking to hold Defendants jointly liable.  ECF No. 25 at 1 n.1.  All Defendants have failed to appear and have defaulted.  ECF No. 31; see also ECF No. 35-1 at ¶¶ 4-8 (Declaration of Christine Ann Daley).  Therefore, there is no possibility of inconsistent liability among Defendants based on the allegations in the complaint, and default judgment may accordingly be entered.

### III.    ANALYSIS

#### A. Claims

1. *Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which is "likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).  In order to prevail on a trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same or confusingly similar to Plaintiffs' trademark such that consumers were likely to confuse the two.  *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

To establish their claims, Plaintiffs alleged that they are the owners of all rights in and to the ABS-CBN Marks, *see* ECF No. 1 at ¶¶ 22, 26, and that Defendants, without Plaintiffs' permission, *id.* at ¶¶ 24, 29, are using "identical copies" of one or more of the ABS-CBN Marks, *id.* at ¶ 40, and "actively using, promoting, and otherwise advertising, distributing, and performing substantial quantities of ABS-CBN's Copyrighted Works under the ABS-CBN Marks via their Counterfeit Services," *id.* at ¶ 41. According to the complaint, Defendants' trademark-infringing activities "are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public" and damage to Plaintiffs. *Id.* at ¶ 76, *see also, e.g.*, *id.* at ¶¶ 40-53. Thus, Plaintiffs have sufficiently alleged facts establishing each of the elements necessary to state a claim for trademark counterfeiting and infringing under § 32 of the Lanham Act and are entitled to default judgment on Count I.

2. *False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)*

To prevail on their claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must establish that Defendants used in commerce, in connection with any goods or services, "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of Defendants with Plaintiffs, or "as to the origin, sponsorship, or approval of" Defendants' goods, services, or commercial activities by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See, e.g.*, *Zuru Inc.*, 2024 WL 1809310, at *2 (citing *Two Pesos, Inc. v. Taco*

*Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring)); *Fendi S.r.l. v. Bag*, No. 19-cv-61356, 2019 WL 4693677, at *3 (S.D. Fla. Aug. 28, 2019).

Here, Plaintiffs alleged that Defendants' services are "using virtually identical copies of the ABS-CBN Marks to perform and distribute the Copyrighted Works, including within many of ABS-CBN's important business markets, such as the State of Florida and the United States of America." ECF No. 1 at ¶ 81. Further, Defendants' counterfeit services are "different in quality," which is "likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship" of the services. *Id.*; *see also id.* at ¶ 40. Plaintiffs' allegations establishing that Defendants used the ABS-CBN Marks in commerce and caused confusion are sufficient to state a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs are therefore entitled to default judgment on Count II.

### 3. Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

"The analysis of Florida common law claims of trademark infringement and unfair competition is the same as federal claims." *GR Opco, LLC v. Eleven IP Holdings*, No. 22-24119-CIV, 2024 WL 4110524, at *6 (S.D. Fla. July 17, 2024), *report and recommendation adopted*, 2024 WL 4104288 (S.D. Fla. Sept. 5, 2024); *see also, e.g.*, *KAWS, Inc. v. Printify Inc.*, No. 23-CV-24063, 2024 WL 3916493, at *6 (S.D. Fla. Aug. 23, 2024) ("Florida law unfair competition claims are evaluated in same manner as trademark infringement claims."); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1362 (S.D. Fla. 2017) (concluding that "the legal analysis for Lanham Act claims applies to" Florida claims of unfair competition); *PetMed XPRESS, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) ("The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act."); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (recognizing that the analysis of Florida statutory and common law claims of

trademark infringement and unfair competition is the same as under the federal trademark infringement claim).

As to Count III, Plaintiffs alleged that Defendants are "promoting, advertising, and otherwise facilitating access to the Copyrighted Works using counterfeits and/or infringements of one or more of the ABS-CBN Marks" and using the ABS-CBN Marks to "unfairly compete with ABS-CBN for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web," all of which is "likely to cause and [is] causing confusion, mistake, and deception among consumers." ECF No. 1 at ¶¶ 89-91. These allegations are sufficient to state a Florida common law claim for unfair competition. As to Count IV, Plaintiffs alleged that they are the owners of the ABS-CBN Marks and that Defendants' use of the ABS-CBN Marks is "likely to cause and [is] causing confusion, mistake and deception among consumers." *Id.* at ¶¶ 94-97. Thus, Plaintiffs have sufficiently alleged facts establishing the elements of the common law unfair competition and trademark infringement claims and are entitled to default judgment on both claims.

*4. Direct Infringement and Contributory Infringement of Copyright (Counts V and VI)*

The Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) . . . is an infringer of the copyright or right of the author." 17 U.S.C. § 501(a). Accordingly, to prevail on their claim of direct infringement of their rights pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4), Plaintiffs must "show ownership of the allegedly infringed material" and "must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also, e.g.*, *Bell v. Wilmott Storage Servs., LLC*, 12

F.4th 1065, 1080 (9th Cir. 2021); *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (explaining that a copyright infringement action requires a plaintiff to prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original"); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1242 n.5, 1248 (11th Cir. 2014); *Disney Enters., Inc. v. Hotfile Corp.*, No. 11-20427, 2013 WL 6336286, at *30 (S.D. Fla. Sept. 20, 2013) (explaining that to "make a prima facie case of direct infringement" a plaintiff must "prov[e] ownership of a particular work and evidence of unauthorized copying").  "One of the rights guaranteed to a copyright owner by the Copyright Act is the 'exclusive right to perform the copyrighted work publicly,' which is infringed by transmitting or otherwise communicating a performance to the public in the form of streaming over the internet." *Caracol Television, S.A. v. TVmia Int'l Corp.*, No. 16-23486-CIV, 2017 WL 6389719, at *3 (S.D. Fla. Dec. 13, 2017) (citing *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2502 (2014)).

To establish a cause of action for secondary (contributory) infringement of copyright, "a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement."  *See Tiffany (NJ), LLC v. Dongping*, No. 10-61214-CIV, 2010 WL 4450451, at *5 n.1 (S.D. Fla. Oct. 29, 2010) (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

Plaintiffs have alleged that they are the owners of the registered and unregistered copyrights at issue in this matter.  *See* ECF No. 1 at ¶¶ 32-34, 100.  Plaintiffs have also alleged, and demonstrated through evidence submitted to the Court, that Defendants have infringed ABS-CBN's exclusive rights to the Copyrighted Works by copying, performing, and distributing the Copyrighted Works, and they have thereby established the requisites for direct infringement of

copyright. *See id.* at ¶¶ 40, 45, 100-04, ECF Nos. 1-2, 1-3, 1-4; *see also, e.g.*, *ABS-CBN Corp. v. Barrientos*, No. 15-61515-CIV, 2015 WL 10845783, at *3 n.1 (S.D. Fla. Sept. 11, 2015) ("As to the direct infringement of copyright claim, Defendant's ongoing copying, dissemination and performance of ABS-CBN's Copyrighted Works by facilitating access to and instantly streaming pirated copies of ABS-CBN's Copyrighted Works for users through his websites, directly infringes ABS-CBN's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4)."), *report and recommendation adopted*, 2015 WL 10791899 (S.D. Fla. Sept. 18, 2015). Additionally, Plaintiffs alleged that Defendants had full knowledge of Plaintiffs' ownership and exclusive rights in and to the Copyrighted Works. ECF No. 1 at ¶ 56; *see also, e.g.*, *id.* at ¶¶ 41, 68, 104, 110. Lastly, Plaintiffs also allege that Defendants intentionally induced, encouraged, or materially contributed to the direct infringement of the Copyrighted Works by the users of the Defendants' counterfeit services, who perform, copy, and/or distribute the Copyrighted Works without authorization or right. *See id.* at ¶¶ 68, 104, 108-111.

Thus, Plaintiffs have sufficiently alleged facts establishing each of the elements necessary to state a claim for direct and contributory copyright infringement under 17 U.S.C. §§ 106 and 501 and are entitled to default judgment on their copyright claims.

_____

Because Plaintiffs have alleged sufficient facts to establish the elements of each of their claims, and because the factual allegations in Plaintiffs' complaint have been substantiated by sworn declarations and other evidence establishing Defendants' liability under each of the claims asserted in the complaint, *see* ECF Nos. 1-4, 5-1, 5-2, entry of default judgment in favor of Plaintiffs and against Defendants pursuant to Federal Rule of Civil Procedure 55 is appropriate.

**B. Injunctive Relief**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g.*, *PetMed XPRESS, Inc.*, 336 F. Supp. 2d at 1222-23; *eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388, 392-93 (2006).

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc.*, 547 U.S. at 392-93. Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports,* 756 F.2d 1525, 1530 (11th Cir. 1985)); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."). Plaintiffs' complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined.

*E.g.*, ECF No. 1 at ¶¶ 12, 70, 75-77, 79, 87, 92, 98, 106, 119.  Further the complaint alleges, and the submissions by Plaintiffs show, that Defendants are promoting, distributing, and performing ABS-CBN's Copyrighted Works via unauthorized distribution services on the Subject Domain Names, and consumers viewing Defendants' counterfeit services would actually confuse them for genuine services and content bearing the ABS-CBN Marks.  *See, e.g.*, *id.* at ¶¶ 40-58.  Indeed, the complaint establishes that Defendants' "counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Services."  *Id*. at ¶ 76.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiffs cannot control the quality of what appears to be their services in the marketplace.  *See, e.g.*, *id.* at ¶ 87.  An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue.  Moreover, Plaintiffs face hardship from their inability to control their reputation in the marketplace.  *See, e.g.*, *id.* at ¶¶ 41, 43, 50, 53, 75-76, 87; *see also* ECF No. 5-1 at ¶ 30.  By contrast, Defendants face no hardship if they are prohibited from the infringement of the ABS-CBN Marks and Copyrighted Works, which is an unlawful act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit services.  *See Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (finding that the imposition of an injunction would not disserve the public interest because "the public interest is the interest in upholding copyright protections") (quoting *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993)); *Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D.

Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

Unless Defendants are enjoined from continuing to infringe on the ABS-CBN Marks and Copyrighted Works, they will be free to continue infringing Plaintiffs' intellectual property rights with impunity and will continue to defraud the public with their illegal activities. Accordingly, the undersigned recommends that Plaintiffs' request for a permanent injunction be granted.

Additionally, "[t]he Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities," which may properly include "injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities" by "[o]rdering the cancellation or transfer" to Plaintiff of the domain names used by Defendants for their infringing activities, so that the domain names "may be disabled from further use as platforms for the infringement of Plaintiffs' intellectual property rights." *ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *5-6 & n.5 (S.D. Fla. Dec. 27, 2017) (collecting cases); *see also, e.g.*, *Malletier v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified on Schedule "A*,*" No. 25-60003-CIV, 2025 WL 2256488, at *6 (S.D. Fla. July 30, 2025). Here, given the nature of Defendants' infringing activities, the undersigned also recommends that this Court (i) cancel, or at Plaintiffs' election, transfer the Subject Domain Names at issue to Plaintiffs and require Defendants, their agents or assignees to assign all rights, title and interest to the Subject Domain Names to Plaintiffs; and (ii) permanently disable, delist, or deindex the websites' uniform resource locators ("URLs") and the Subject Domain Names from all search engines.

### C. Requested Statutory Damages

#### 1. *Statutory Damages for Trademark Infringement*

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service.  15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service.  15 U.S.C § 1117(c)(2).  Here, Plaintiffs have elected statutory damages pursuant to § 1117(c) as to Count I of the complaint.[3]  ECF No. 35 at 12.

Statutory damages under the Lanham Act are "particularly appropriate in the default judgment context" because it is difficult to ascertain defendants' profits and because defendants have not participated in the litigation.  *See CreeLED, Inc. v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule "A,"* No. 22-CV-23683-JEM/Becerra, 2023 WL 6130593, at *4 (S.D. Fla. Sept. 11, 2023) (citing *Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-60829-Civ-Lenard/Goodman, 2016 WL 8679081, at *7 (S.D. Fla. Nov. 3, 2016)); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are especially "appropriate in default judgment cases due to infringer nondisclosure").  The Court has wide discretion to determine the amount of such statutory damages.  *See PetMed Express, Inc.*, 336 F. Supp 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F. 2d 839, 853 (11th Cir. 1990)).  An

---

[3] Although Plaintiffs have also asserted claims for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV), Plaintiffs acknowledge that damages for such claims are encompassed within their requested damages pursuant to § 1117(c), and Plaintiffs seeks no additional damages based on those claims.  *See* ECF No. 35 at 12 n. 4.

award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-civ, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (citing *Form Motor Co. v. Cross*, 441 F. Supp 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enters. Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). An award of statutory damages pursuant to 15 U.S.C. § 1117(c) is "intended not just for compensation for losses, but also to deter wrongful conduct." *See CreeLED*, 2023 WL 6130593, at *4 (citing *PetMed Express*, 336 F. Supp. 2d at 1220-21)).

Here, the allegations in Plaintiffs' complaint, which are taken as true, clearly establish that Defendants intentionally copied the ABS-CBN Marks for the purpose of deriving benefit from Plaintiffs' goodwill and reputation. *E.g.*, ECF No. 1 at ¶ 57. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The record in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one service bearing and/or using marks that were, in fact, counterfeits of at least one of the ABS-CBN Marks. *See id.* at ¶¶ 17, 21; ECF No. 1-4. Based on the above considerations, Plaintiffs request that the Court award statutory damages of one hundred thousand dollars ($100,000.00) against each Defendant because each Defendant used at least one counterfeit mark on one type of service. *See* ECF No. 35 at 14. The requested amount of statutory damages should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' ABS-CBN Marks, compensate Plaintiffs, and punish Defendants, all

16

stated goals of 15 U.S.C. § 1117(c).  The undersigned finds that this requested award of statutory damages—$100,000.00 per Defendant—falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### 2.  *Statutory Damages for Copyright Infringement*

Plaintiffs' complaint also requests statutory damages pursuant to 17 U.S.C. § 504(c) for copyright infringement.  A copyright owner may choose between two types of damages: "actual damages and any additional profits of the infringer" or "statutory damages."  17 U.S.C. § 504(a); *see also id.* at § 504(b)-(c); *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997).  The Copyright Act provides for statutory damages for copyright infringements "in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  "In addition, pursuant to 17 U.S.C. § 504(c)(2), the Court in its discretion may increase an award of statutory damages up to $150,000.00 when infringement was committed willfully."  *XYZ Corp. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, 668 F. Supp. 3d 1268, 1276-77 (S.D. Fla. 2023). "In awarding enhanced damages in the context of section 504(c)(2), 'deterrence of future violations is a legitimate consideration' because 'defendants must not be able to sneer in the face of copyright owners and copyright laws.'"  *XYZ Corp.*, 668 F. Supp. 3d at 1277 (quoting *Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 851 (11th Cir. 1990)).  "In interpreting section 504(c), courts have held that the statute vests the trial court with wide discretion to set damages within the statutory limits."  *XYZ Corp.*, 668 F. Supp. 3d at 1277 (quoting *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994)).

Defendants, who have not appeared, control all the necessary information for a calculation of relief under § 504(b).  *See* ECF No. 35-1 at ¶¶ 4-8.  As a result, Plaintiffs cannot calculate an amount recoverable pursuant to 17 U.S.C. § 504(b).  Instead, Plaintiffs seek statutory damages for

Defendants' willful infringement of Plaintiffs' ABS-CBN copyrights under 17 U.S.C. § 504(c)(2). *See* ECF No. 35 at 15-16.

Plaintiffs request that the Court award them $30,000.00 against Defendant Number 1, hdmvs.top ("Defendant 1"). *Id.* at 16. To determine whether Plaintiffs are entitled to statutory damages for Defendant 1's willful infringement, the undersigned must first determine if the copyright infringement was willful. *XYZ Corp.*, 668 F. Supp. 3d at 1277. "Willful infringement occurs 'when the infringer acted with "actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright."'" *Id.* (quoting *Arista Recs., Inc.*, 298 F. Supp. 2d at 1312); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) ("[W]illful copyright infringement under § 504(c)(2) encompasses reckless disregard of the possibility that one's actions are infringing a copyright."). A court may infer that a defendant willfully infringed upon a plaintiff's copyright because of a defendant's default. *XYZ Corp.*, 668 F. Supp. 3d at 1277.

Here, Plaintiffs allege that Defendants "have actual or constructive knowledge, or should have knowledge, of their infringement of ABS-CBN's Copyrighted Works" because "they advertise and promote the content on their websites operating under the Subject Domain Names" and "as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and Defendants profit as a direct result of performing that content." ECF No. 1 at ¶¶ 104-05. The evidence establishes Defendants willfully infringed Plaintiffs' copyrighted programming to attract visitors to their websites, so that they may in turn profit from these visitors' page views in the form of advertising revenue. *Id.* at ¶¶ 40, 49, 62, 104. In any event, Defendants have defaulted on Plaintiffs' allegations of willfulness. ECF No. 32; *see also* ECF No. 35-1 at ¶¶ 4-8. These facts, established by Defendants' default and the well-pleaded facts of the complaint,

demonstrate that Defendants acted willfully, that is, knowingly or with at least reckless disregard of the fact that their conduct infringed upon Plaintiffs' exclusive copyrights.  Accordingly, Plaintiffs have adequately established that Defendants' infringement of Plaintiffs' copyrights was willful.

Plaintiffs request the Court award them $30,000.00 against Defendant 1 for its infringement of the registered work entitled "The Hows of Us," registration number PA 2-192-077, with a registration date of June 10, 2019.  *See* ECF No. 35 at 16; *see also* ECF No. 1-3; ECF No. 1-4 at 3-5.  This suggested award is within the statutory range for a willful violation (as well as within the statutory range for a non-willful violation) and is sufficient and appropriate to compensate Plaintiffs, punish Defendant 1, and deter Defendants and others from continuing to infringe Plaintiffs' copyrights.

## IV.    CONCLUSION

For the foregoing reasons, it is **RESPECTFULLY RECOMMENDED** that Plaintiffs' Motion for Entry of Default Final Judgment, ECF No. 35, be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation.  Accordingly, within seven (7) days from the date of this Report and Recommendation, that is, **by March 12, 2026**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge.  Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d

790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

        **RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 5th day of March 2025.

                          _____

                          EDUARDO I. SANCHEZ
                          UNITED STATES MAGISTRATE JUDGE

cc:     Hon. Jose E. Martinez
        Counsel of Record

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Def. No. | Subject Domain Name |
|---|---|
| 1 | hdmvs.top |
| 2 | kankoc.info |
| 3 | lambinganpinoyflix.net |
| 4 | tambayanteleseryes.net |
| 4 | piinoytambayans.net |
| 5 | pinoytambayantvs.net |
| 5 | piinoytambayantv.su |
| 6 | piinoytv.com |
| 7 | pinoy-flix.com |
| 8 | pinoyflixhd.com |
| 9 | pinoyflixreplay.com |
| 10 | pinoyflixstambayan.net |
| 11 | pinoyflixz.com |
| 11 | pinoyteleseryez.com |
| 11 | tambayanshd.com |
| 11 | tambayansflix.com |
| 12 | pinoytambayano.net |
| 12 | pinoylambingantambayans.su |
| 13 | pinoystambayans.net |
| 14 | pinoytambayanstv.com |
| 15 | pinoytvflixs.org |
| 15 | pinoytvflixteleserye.net |
| 16 | tambayans.su |
| 17 | teleseryetambayann.su |
| 17 | teleseryetambayans.su |

21